

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-11-00289-CR |
| Appellant, | § | Appeal from |
| v. | § | County Criminal Court No. 2 |
| RAFAEL CAMACHO, III, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20110C01928) |
| | § | |

## **O P I N I O N**

The State of Texas appeals from an order granting Rafael Camacho, III's motion to suppress. For the reasons that follow, we reverse and remand.

### **FACTUAL SUMMARY**

At approximately 1 a.m. on January 30, 2011, El Paso Police Officer Luis Avalos was dispatched to the scene of a traffic accident on I-10 East. When Avalos arrived, he saw a Nissan Altima and a black Jaguar on the shoulder. EMS personnel were attending to Camacho but he refused treatment. Avalos noticed that Camacho's speech was slurred while he was speaking to EMS personnel. Camacho was the only person present at the scene so Avalos asked him whether he was operating one of the vehicles. Avalos admitted he had been driving the Altima, and when he changed lanes the other car "came from out of nowhere" and he struck it. Because Camacho was cold and shivering, Avalos asked him if he would like to sit in the patrol vehicle to

get warm. Camacho said that he would. Avalos emphasized to Camacho that he was not being arrested. Avalos testified at the suppression hearing that he would have stopped Camacho from getting out of the patrol car and walking away not because he was being detained but due to a concern Camacho could be struck by a car on the Interstate. After Camacho had an opportunity to warm up, Avalos opened the patrol car's door and got inside. Avalos noticed the smell of an alcoholic beverage inside of the vehicle. The officer then had Camacho exit the vehicle and perform the HGN test. Avalos determined that Camacho demonstrated six out of six possible clues of intoxication. Camacho was willing to perform other field sobriety tests but one of his legs was injured and he was in too much pain to do so. Avalos placed Camacho under arrest for driving while intoxicated. Camacho subsequently gave a breath specimen and testing showed that his blood alcohol concentration was above the legal limit.

Camacho filed a motion to suppress on the grounds that the officer lacked reasonable suspicion to detain him and was without probable cause to arrest him. He testified at the suppression hearing that he was driving on I-10, and when he switched lanes he struck a vehicle parked in the "breakdown lane". He denied being cold or shivering at the scene and believed he had been placed under arrest when the officer made him get in the backseat of the patrol vehicle. According to Camacho, the rest of the officer's testimony was true.

The trial court granted the motion to suppress and filed written findings of fact and conclusions of law. The court concluded that the officer "did not have probable cause to arrest Rafael Camacho for the offense of DWI."

## LEGALITY OF THE DETENTION AND ARREST

In its sole issue on appeal, the State contends that Camacho was not seized when he was initially placed in the back of the patrol car, that the officer subsequently had reasonable

suspicion to detain him for investigation of driving while intoxicated, and that after the investigation continued, the officer had probable cause to arrest Camacho for driving while intoxicated.

*The Standard of Review*

A trial court's on a motion to suppress is reviewed for an abuse of discretion under a bifurcated standard. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex.Crim.App. 2011); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). We give almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but apply a *de novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Dixon*, 206 S.W.3d at 590, *citing Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex.Crim.App. 1997). When the trial court makes explicit findings, as it did here, we determine whether the evidence, when viewed in a light most favorable to the trial court's ruling, supports those fact findings. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex.Crim.App. 2007). We review a trial court's application of the law of search and seizure to the facts *de novo*. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex.Crim.App. 2010). We will uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 448; *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007).

*The Trial Court's Findings and Conclusion*

The trial court found that Officer Avalos was dispatched to a traffic accident on Interstate 10. The officer arrived at the scene and saw a black Jaguar and a Nissan Altima. EMS personnel were attending to a person, Camacho, believed to have been involved in the accident. The officer observed that Camacho had slurred speech and refused medical attention. He was

also shivering. The court found that the officer did not have any facts regarding ownership of the two vehicles and he placed Camacho in the patrol unit because he was cold. Camacho was driving on I-10 East and struck another vehicle as he made a lane change. The only sign of intoxication was the HGN test because Camacho could not physically perform the other SFSTs. Based on these facts, the court concluded that Officer Avalos did not have probable cause to arrest Camacho for driving while intoxicated.

*Consensual Encounter and Investigative Detention*

The State contends that the initial encounter between Officer Avalos and Camacho was a consensual one, and that encounter evolved into an investigative detention which subsequently led to the development of probable cause. Not all encounters between the police and citizens implicate the Fourth Amendment's protection against unreasonable seizures. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *State v. Woodard*, 341 S.W.3d 404, 411 (Tex.Crim.App. 2011); *State v. Garcia-Cantu*, 253 S.W.3d 236, 238 (Tex.Crim.App. 2008). Unlike investigative detentions and arrests, which are seizures for Fourth Amendment purposes, an encounter is a consensual interaction that the citizen may terminate at any time. *Woodard*, 341 S.W.3d at 411; *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995). A detention occurs when a person yields to an officer's show of authority or when a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. at 436, 111 S.Ct. at 2387; *California v. Hodari D.*, 499 U.S. 621, 629, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991); *State v. Velasquez*, 994 S.W.2d 676, 678-79 (Tex.Crim.App. 1999); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995).

Courts have observed that an officer's questioning of a witness during an accident

investigation is a consensual encounter. *State v. Rudd*, 255 S.W.3d 293, 298 (Tex.App.--Waco 2008, pet. ref'd), *citing State v. Stevenson*, 958 S.W.2d 824, 829 (Tex.Crim.App. 1997); *Stoutner v. State*, 36 S.W.3d 716, 719-20 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd). The answers provided and the officer's observations may provide reasonable suspicion to believe that the offense of DWI has occurred and what began as a consensual encounter may escalate to an investigative detention. *State v. Rudd*, 255 S.W.3d at 298, *citing Stevenson*, 958 S.W.2d at 829. At this point, the officer may administer field sobriety tests. *Id.* The results of the sobriety testing may then lead to probable cause for an arrest. *State v. Rudd*, 255 S.W.3d at 298-99.

Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001). Reasonable suspicion is determined from the totality of the circumstances. *Id*.

Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *Amador v. State*, 275 S.W.3d 872, 878 (Tex.Crim.App. 2009), *citing Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer. *Amador*, 275 S.W.3d at 878. A finding of probable cause requires "more than bare suspicion" but "less than ... would justify ... conviction." *Id., quoting Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

Officer Avalos's initial encounter with Camacho at the scene consisted of listening to Appellant speak with EMS personnel. Avalos observed that Camacho's speech was slurred. The officer then talked to Camacho. Camacho explained that he struck the black Jaguar while changing lanes. The court accepted as true Avalos's testimony that he allowed Camacho, who was cold and shivering, to sit in his patrol car in order to get warm. Up to this point, the entire encounter was a consensual one and the State was not required to show that it was supported by reasonable suspicion or probable cause. When the officer got in the patrol car a short time later and smelled the odor of an alcoholic beverage, however, he decided it was necessary to administer field sobriety tests. That decision is supported by reasonable suspicion to believe Camacho had been operating the vehicle while intoxicated because Camacho admitted driving one of the vehicles involved in the accident, his speech was slurred, and he had the odor of an alcoholic beverage on his person. *See Rubeck v. State*, 61 S.W.3d 741, 745 (Tex.App.--Fort Worth 2001, no pet.)(officer had reasonable suspicion to detain the defendant where the defendant's speech was slurred and the officer detected the odor of alcohol on the defendant's breath). Avalos continued his investigation by administering the HGN test and found that Camacho exhibited six out of six possible clues of intoxication.[1] The trial court found that the HGN test provided a measure of some intoxication. We conclude that Officer Avalos's arrest of Camacho for driving while intoxicated is supported by probable cause because Camacho admitted operating one of the vehicles involved in the traffic accident, his speech was slurred, he

---

[1] Nystagmus is defined as an involuntary rapid oscillation of the eyes in a vertical, horizontal, or rotary direction. *Emerson v. State*, 880 S.W.2d 759, 765 (Tex.Crim.App.1994); *Plouff v. State*, 192 S.W.3d 213, 218 (Tex.App.--Houston [14th Dist.] 2006, no pet.). Horizontal gaze nystagmus refers to the inability of the eyes to smoothly follow an object moving horizontally across the field of vision, particularly when the object is held at an angle of forty-five degrees or more to the side. *Quinney v. State*, 99 S.W.3d 853, 857 (Tex.App.--Houston [14th Dist.] 2003, no pet). The effect of alcohol on nystagmus, specifically HGN, is well-documented. *Emerson*, 880 S.W.2d at 765. In determining whether a person's performance on the HGN test suggests intoxication, an officer looks for three clues in each eye: (1) the lack of smooth pursuit, i.e., the eye cannot follow an object smoothly; (2) distinct nystagmus when the eye is at maximum deviation; and (3) the onset of nystagmus before the eye has moved forty-five degrees. *Quinney*, 99 S.W.3d at 857.

had the odor of an alcoholic beverage on his person, and the HGN test showed evidence of intoxication. *See Rubeck*, 61 S.W.3d at 745 (finding probable cause to arrest for driving while intoxicated where officer observed defendant commit a traffic violation, the defendant had a strong odor of an alcoholic beverage on her breath, her speech was slurred and she exhibited six out of six clues on the HGN test). The State's sole issue on appeal is sustained and we reverse the trial court's order granting Camacho's motion to suppress. This cause is remanded to the trial court for further proceedings.

August 28, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)