

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00361-CR

_____

THE STATE OF TEXAS, Appellant

V.

JORAM WAMBUGU MURICHU, Appellee

---

On Appeal from County Criminal Court No. 7
Tarrant County, Texas
Trial Court No. 1793183

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

The State appeals the trial court's order granting Appellee Joram Wambugu Murichu's motion to suppress evidence. Because we hold that the trial court misapplied the law to the facts, and thus erred in granting the motion to suppress, we will reverse the trial court's order.

## II. BACKGROUND

Murichu was arrested and charged with driving while intoxicated with an alcohol concentration level of 0.15 or higher, *see* Tex. Penal Code § 49.04(d), following a traffic stop conducted by Hurst Police Officer Julio Marroquin. Murichu filed a motion to suppress, asserting that his detention and subsequent arrest were illegal.

At the hearing on Murichu's motion, the State stipulated that his arrest was warrantless. Marroquin testified that at approximately 3:35 a.m. on August 5, 2023, he was driving southbound on Precinct Line Road and that he noticed a car—driven by Murichu—ahead of him weaving within his lane. Marroquin elaborated that Precinct Line Road is divided into four lanes, two southbound and two northbound. He did not remember exactly how long he had followed Murichu before initiating the stop, but he testified that he had seen another vehicle drive past in one of the northbound lanes "maybe a minute" before he started observing Murichu. Marroquin testified that he stopped Murichu's vehicle after seeing his "left two tires" cross "over the dotted yellow line that's in the center that divides the northbound and southbound

traffic."[1]  Marroquin further testified that although he saw no other cars on the road at the moment he conducted the stop, he was concerned that "there could be a vehicle coming out of the roadway because it is a residential area" and that he had previously "responded to drunk drivers crashing into houses near that roadway."  He also testified that he "didn't see anything when [he] was behind [Murichu] go across the roadway" that Murichu would have had to drive around.

Marroquin testified that "the . . . time of night, it being a weekend, [the driver's] weaving within his lane, and . . . failure to maintain [a] single lane" gave him reasonable suspicion to believe that the driver may have been intoxicated but that the weaving and failing to maintain a single lane were the reasons for the stop.  No other witnesses testified, and no video footage was admitted into evidence at the hearing.  After hearing the arguments of counsel, the trial court made the following findings of fact and conclusions of law:

> The Court will find that the officer was on patrol on August the 5th of 2023, was going southbound on Precinct Line Road in Hurst in Tarrant County, Texas.  He came -- his attention came to the defendant's vehicle and that it crossed yellow dotted lines, the first two tires, he testified to, coming into oncoming traffic; and that he felt that he had failed to maintain a single lane, so he stopped the defendant at that time.
>
> It was 3:35 in the morning, approximately.  The officer stated there had been one vehicle going the opposite way, but that vehicle had passed before he noticed the defendant's driving.  There were no other

---

[1]Marroquin conceded at the hearing that he had made an error in his police report, which was not admitted into evidence at the hearing, by indicating that Murichu had crossed "the solid yellow line."

cars on the road at that time, and there was no other pedestrian traffic or anything at that point, even though it was a residential and business area.

There were no other cars around when the car -- when the defendant's car weaved, and there was no oncoming traffic when he saw the car weave. And it was a single weave where he crossed the line, and there was no other danger involved.

The Court finds that [*State v. Hardin*, 664 S.W.3d 867 (Tex. Crim. App. 2022)] is controlling in this case, and the motion to suppress is granted.

The State timely appealed. *See* Tex. Code Crim. Proc. art. 44.01(a)(5), (d).

## III. DISCUSSION

The State raises one issue on appeal: that the trial court's suppression order was the result of applying the incorrect legal standard to the undisputed facts and should be reversed. Because the trial court (1) found as a matter of fact that Marroquin saw Murichu commit a traffic offense and (2) misapplied the Court of Criminal Appeals' decision in *Hardin* to this case, we agree that the trial court erred in granting the motion to suppress, and we reverse its order.

## A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating

4

credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

When the trial court grants a motion to suppress and files accompanying findings of fact and conclusions of law, and the sole witness at the suppression hearing is the arresting officer, our only question is whether the trial court properly applied the law to the facts it found, a de novo review. *See State v. Gray*, 158 S.W.3d 465, 467, 469 (Tex. Crim. App. 2005); *see also State v. Sheppard*, 271 S.W.3d 281, 286–88, 292 (Tex. Crim. App. 2008) (holding that when trial court's findings did not indicate judge disbelieved sole witness's credibility, appellate court could not assume disbelief or speculate on additional fact findings to support suppression ruling; instead, appellate court had to assume that trial court erred in its legal conclusion from the facts it found).

## B. Applicable Law (Generally)

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. Under the

5

Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005). A police officer may arrest an individual without a warrant only if probable cause exists with respect to that individual and the arrest falls within one of the exceptions set out in the Code of Criminal Procedure. *Torres*, 182 S.W.3d at 901; *see* Tex. Code Crim. Proc. arts. 14.01–.02.

To have probable cause for a warrantless arrest, an officer must reasonably believe, based on facts and circumstances within the officer's personal knowledge—whether through direct observation, from reasonably trustworthy information, or both—that a person has committed or is committing an offense. *Torres*, 182 S.W.3d at 901–02. The officer must base probable cause on specific, articulable facts rather than the officer's mere opinion. *Torres*, 182 S.W.3d at 902. We use the "totality of the circumstances" test to determine whether probable cause existed for a warrantless arrest. *Id.*

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Johnson*, 622 S.W.3d at 384. An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *See Johnson*, 622 S.W.3d at 384. Reasonable suspicion exists when, based on the totality of the circumstances,

6

the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.[2] *Id.* This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017). Whether the totality of circumstances supports reasonable suspicion or probable cause is a legal determination we review de novo. *Sheppard*, 271 S.W.3d at 291.

## C. Applicable Law (Specific to Traffic Offenses)

An officer has probable cause to stop and arrest a driver if he sees the driver commit a traffic offense. *Gray*, 158 S.W.3d at 469–70; *see* Tex. Transp. Code § 543.001. Texas Transportation Code Section 545.051 provides, in pertinent part:

> (a) An operator on a roadway of sufficient width shall drive on the right half of the roadway, unless:
>
> > (1) the operator is passing another vehicle;

---

[2]At the hearing, both parties focused on whether Marroquin had reasonable suspicion to stop Murichu, not probable cause to arrest him. From their appellate briefs, it appears that the parties consistently agree that reasonable suspicion, not probable cause, is the appropriate legal standard to apply here. But because we conclude that Marroquin had probable cause to arrest Murichu for a traffic offense, this distinction is immaterial to our analysis. *See Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh'g) ("Because reasonable suspicion is a lesser standard than probable cause, when an officer has probable cause to detain a suspect, the officer has also satisfied the reasonable suspicion standard for detention.").

(2) an obstruction necessitates moving the vehicle left of the center of the roadway and the operator yields the right-of-way to a vehicle that:

(A) is moving in the proper direction on the unobstructed portion of the roadway; and

(B) is an immediate hazard;

(3) the operator is on a roadway divided into three marked lanes for traffic; or

(4) the operator is on a roadway restricted to one-way traffic.

. . . .

(c) An operator on a roadway having four or more lanes for moving vehicles and providing for two-way movement of vehicles may not drive left of the center line of the roadway except:

(1) as authorized by an official traffic-control device designating a specified lane to the left side of the center of the roadway for use by a vehicle not otherwise permitted to use the lane;

(2) under the conditions described by Subsection (a)(2); or

(3) in crossing the center line to make a left turn into or out of an alley, private road, or driveway.

Tex. Transp. Code § 545.051. We have held that a violation of this statute alone justifies an officer's stopping a motor vehicle. *See Bracken v. State*, 282 S.W.3d 94, 98 (Tex. App.—Fort Worth 2009, pet. ref'd); *Rubeck*, 61 S.W.3d at 745.

Here, the trial court found that Marroquin's "attention came to [Murichu]'s vehicle and that it crossed yellow dotted lines, the first two tires . . . coming into oncoming traffic." There was no evidence that any of the enumerated exceptions in Subsections (a) or (c) of Section 545.051 were applicable. Had the trial court properly

8

applied the law to its finding, then it would have concluded that Marroquin had seen Murichu commit a violation of Subsection (a) and, if the trial court credited Marroquin's testimony that the road had two northbound lanes and two southbound lanes of moving traffic, then a violation of Subsection (c) as well. *See Bracken*, 282 S.W.3d at 98 (holding that officer's observation that appellant "crossed the center line of the two-lane, two-way roadway by half a vehicle's width . . . was enough to create a reasonable suspicion that [a]ppellant had violated the law"); *Rubeck*, 61 S.W.3d at 745 (holding that officer had probable cause to stop appellant's vehicle when he observed her commit traffic offense by crossing center line of highway and almost causing collision).

Murichu argues that the State urged at the hearing that the stop was lawful based on a violation of Section 545.051, that the trial court rejected the State's argument, and that the trial court's "findings are entitled to great deference." But our deferential standard of review in suppression cases applies only "to a trial court's determination of historical facts and credibility" and "to a trial court's ruling on mixed questions of law and fact[ that] turn[] on the evaluation of credibility and demeanor." *Hardin*, 664 S.W.3d at 871–72 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review de novo questions of law and mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Martinez*, 570 S.W.3d at 281. Appellate courts have appropriately reversed trial courts that granted motions to suppress when the trial court's fact findings indicated a Section

9

545.051 violation. *See, e.g., State v. Zubiate*, No. 08-19-00215-CR, 2020 WL 5105805, at \*6 (Tex. App.—El Paso Aug. 31, 2020, no pet.) (not designated for publication); *State v. Evans*, No. 06-09-00216-CR, 2010 WL 1255819, at \*3 (Tex. App.—Texarkana Apr. 2, 2010, pet. ref'd) (mem. op., not designated for publication).

The trial court's—and Murichu's—reliance on *Hardin* is unavailing on the Section 545.051 issue. *Hardin* involved an alleged violation of a different statute— Transportation Code Section 545.060(a). *See* 664 S.W.3d at 872–78 (construing and analyzing Section 545.060). That statutory subsection provides, "An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." Tex. Transp. Code § 545.060(a). In *Hardin*, a police officer had stopped the appellee for committing the traffic offense of "failing to maintain a single marked lane of traffic" when he observed the right rear tire of her rented U-Haul touch and drive on the striped line marking the right side of the center lane. 664 S.W.3d at 870. No circumstances made this movement unsafe. *Id.* The appellee moved to suppress evidence obtained after that warrantless traffic stop, and the trial court granted her motion. *Id.*

The Court of Criminal Appeals held that a person only violates Section 545.060(a) "if the person fails to maintain a single marked lane of traffic in an unsafe manner." *Id.* at 876. Thus, the Court held that the trial court did not err in granting the motion to suppress because, without any evidence suggesting that this movement

10

was unsafe, the officer lacked reasonable suspicion to stop the appellee's vehicle. *Id.* The court did not even mention Section 545.051 in its opinion. *See Cavazos v. State*, No. 13-22-00310-CR, 2023 WL 5285405, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 17, 2023, no pet.) (mem. op., not designated for publication) ("*Hardin* says nothing about § 545.051.").

As we pointed out in *Bracken*, Section 545.051(a), unlike Section 545.060(a), does not contain an "unless the movement can be made safely" exception to the prohibition against crossing the center line. 282 S.W.3d at 98. *Hardin* is therefore inapplicable to Murichu's Section 545.051 argument. Just like in *Bracken*, "whether [Murichu] could safely cross the center line is irrelevant to our reasonable suspicion analysis." *See id.* at 98–99.

We hold that the trial court's fact findings in this case necessitated a legal conclusion that Marroquin had reasonable suspicion to stop Murichu and probable cause to arrest him for a violation of Section 545.051(a). Because we have determined that the evidence justified a stop based on Murichu's violation of Section 545.051(a), we need not decide whether the suppression hearing evidence in this case supports a reasonable suspicion that Murichu violated Section 545.060(a). *See id.* at 98. Accordingly, we sustain the State's one issue.

## IV. CONCLUSION

Having sustained the State's issue, we reverse the trial court's order and remand this case to the trial court for further proceedings. *See* Tex. R. App. P. 43.2(d).

11

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 18, 2026